UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEEVINE JESSE COLON
        Plaintiff,

v.                  **REPORT AND RECOMMENDATION**

                    15-CV-834(RJA)(JJM)

NANCY A. BERRYHILL,[1]
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,
        Defendant.
_____

## INTRODUCTION

   Before the court are the parties' cross-motions for judgment on the pleadings [17, 22][2] which were referred to me for preparation of a Report and Recommendation [18]. For the reasons stated below, I recommend that the determination of the Acting Commissioner be reversed and this case be remanded for the calculation of benefits and the determination of an onset date.

## BACKGROUND

   Starting in 1992, plaintiff received Supplemental Security Income ("SSI") benefits as a disabled child (T. 13).[3] He had been awarded benefits with an onset date of March 30, 1992 due to attention deficit hyperactivity disorder ("ADHD") "with marked delays in social

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration ("SSA"). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] Bracketed references are to the CM/ECF docket entries.

[3] References denoted as "T" are to the transcript of the administrative record.

and concentration/persistence/pace domains pf development" (T. 62). The benefits were initially terminated in September of 1999 due to an allegedly significant medical improvement. Id. However, after an administrative hearing it was determined that plaintiff's "disability did not end" and that "Deevine's payments will continue" (T. 57, 63). Apparently, plaintiff stopped receiving disability benefits as of some time in 2003, but instead received "child's insurance benefits . . . as a minor child, based on age alone" (T. 301). These benefits ended in August 2007 when plaintiff stopped attending school full time after he turned 18 years old. Id.

On October 27, 2006, plaintiff filed an application for Social Security benefits as a disabled adult child ("DAC")[4] (T. 13, 56, 737). He asserts that he is disabled due to mobility problems, brain damage, depression, asthma, and arthritis (T. 113, 800). He alleges that he has been disabled since he was born on August 28, 1989. Id. While his DAC application was pending, he filed a claim for SSI on September 26, 2007 (T. 89). The SSI application was merged with his DAC application (T. 13) [referred to as "plaintiff's first set of applications"]. After a hearing on January 27, 2009, Administrative Law Judge ("ALJ") William E. Straub denied benefits in a decision dated February 20, 2009 (T. 10-21). On March 5, 2009, plaintiff appealed ALJ Straub's decision to the Appeals Council (T. 545).

---

[4] Pursuant to 42 U.S.C. §402(d)(1), a claimant may be entitled to DAC benefits based on the record earnings of another individual who was entitled to old-age or disability insurance benefits, or who died as a fully insured individual, if the claimant: (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is under a disability (as defined in 42 U.S.C. §423(d)) which began before he attained the age of 22. The regulations (20 C.F.R. §404.350) state that: "you are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if—(1) you are the insured person's child, based upon a relationship described in §§ 404.355 through 404.359; (2) you are dependent on the insured, as defined in §§ 404.360 through 404.365; (3) you apply; (4) you are unmarried; and (5) you are under age 18; you are 18 years old or older and have a disability that began before you became 22 years old; or you are 18 years or older and qualify for benefits as a full-time student as described in §404.367". There does not appear to be any dispute that plaintiff would meet the eligibility requirements for DAC benefits if he were determined to be disabled.

On February 27, 2009 and March 20, 2009, respectively, plaintiff filed a new set of applications for SSI benefits (T. 745) and DAC (T. 739) [referred to as "plaintiff's second set of applications"].

On February 18, 2011, the Appeals Council denied plaintiff's request for a review of ALJ Straub's February 20, 2009 decision with respect to plaintiff's first set of applications (T. 438). On March 11, 2011, plaintiff sought judicial review of the final determination of his first set of applications in Colon v. Astrue, 11CV210-RJA-JJM, which was referred to me. Plaintiff's Memorandum of Law [17-1], p. 5. On April 23, 2013, I issued a Report and Recommendation stating that plaintiff's first set of applications should be remanded for further administrative proceedings, including: (a) consideration of the assessment by Dr. Davina Moss-King (T. 426-27), (b) consideration of plaintiff's adjustment disorder, depression, and anxiety (T. 427-28), (c) a function-by-function analysis with respect to plaintiff's residual functional capacity (T. 428), and (d) articulation of a clear basis regarding the assessment of plaintiff's credibility. Id. District Court Judge Richard J Arcara adopted my report and recommendation on May 23, 2013 (T. 403).

In the meantime, an administrative hearing was conducted by ALJ Eric L. Glazer with respect to plaintiff's second set of applications on June 14, 2011 (T. 1124). ALJ Glazer conducted a supplemental hearing with respect to these applications on July 26, 2011 (T. 1096). He then issued a decision denying the second set of applications on August 11, 2011 (T. 464). However, upon plaintiff's request for review, the Appeals Council remanded the second set of applications back to ALJ Glazer for further evaluation of the opinion of Dr. Moss-King, to obtain supplemental evidence from a vocational expert, and to complete a list of exhibits (T. 382).

Pursuant to that administrative remand, a third administrative hearing with respect to plaintiff's second set of applications (the fourth overall administrative hearing) was conducted

by ALJ Glazer on October 23, 2012 (T. 1168). On November 7, 2012, ALJ Glazer again issued a decision denying the claims presented in plaintiff's second set of applications (T. 385). Plaintiff appealed that decision to the Appeals Council, which on August 1, 2014 vacated ALJ Glazer's November 7, 2012 decision, and again remanded plaintiff's second set of applications for further consideration of the opinions issued by various treating and consultative psychologists, consideration of plaintiff's obesity, and to obtain further evidence from a vocational expert (T. 433-34). At the same time, the Appeals Council vacated the February 20, 2009 decision by ALJ Straub (which had been the subject of my April 23, 2013 Report and Recommendation), and consolidated plaintiff's first and second sets of applications (T. 432).

On March 12, 2015, the fifth administrative hearing with respect to plaintiff's combined claims was conducted by ALJ Bruce R. Mazzarella (T. 322). On June 4, 2015, ALJ Mazzarella issued a decision denying plaintiff's applications (T. 298). He found that plaintiff suffered from the following severe impairments: obesity, chronic back pain, asthma, learning disorder (operating at marginal level overall with a fourth-grade reading level and fifth-grade math level, with expressive and receptive delays), borderline to low average intellectual functioning, depressive disorder, and anxiety disorder (T. 305). He determined that plaintiff's shoulder problems and flat feet constituted non-severe impairments. Id. Nevertheless, ALJ Mazzarella determined that plaintiff retained the residual functional capacity to perform medium exertion work (T. 308). Based upon the testimony of vocational expert Jay Steinbrenner (T. 373-77), ALJ Mazzarella stated that plaintiff could perform work as a dishwasher, dining room attendant, or laundry worker (T. 316-17).

Plaintiff declined to seek review of ALJ Mazzarella's decision with the Appeals Council. Pursuant to 20 C.F.R. §§404. 984(d) and 416.1484(d), ALJ Mazzarella's decision

became the final determination of the Acting Commissioner after a 61-day waiting period (T. 299).[5] Upon the expiration of that waiting period, plaintiff commenced this action on September 17, 2015. Complaint [1].

Plaintiff asserts that ALJ Mazzarella erred by failing to properly evaluate the opinions of Dr. Hongbiao Liu (Plaintiff's Memorandum of Law [17-1], p. 20) and Dr. Moss-King (id., p. 23), by selectively rejecting part of the opinion from consultative psychologist Dr. Thomas Ryan (id., p. 26), and by failing to do a full and proper credibility assessment of plaintiff (id., p 29). In light of the procedural history of this case, plaintiff asserts that this matter should be remanded solely for the calculation of benefits. Id., p. 32.

## ANALYSIS

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

---

[5] The Social Security Act provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action" in federal district court. 42 U.S.C. § 405(g). The Act does not define "final decision," instead leaving it to the SSA to give meaning to that term through regulations. See § 405(a). Typically, a claimant must seek review by the Appeals Council to exhaust administrative remedies. If a claimant fails to request review from the Council, there is no final decision and, as a result, no judicial review in most cases. See §404.900(b); Sims v. Apfel, 530 U.S. 103, 107 (2000). Here, as noted above, plaintiff successfully obtained a remand of ALJ Straub's initial decision in the prior federal court action before me. Upon remand, the Appeals Council consolidated that case with plaintiff's subsequent applications (T. 432), which led to the decision by ALJ Mazzarella challenged in this action. A decision by an ALJ, upon remand, is deemed a "final decision" by regulation if no exceptions are filed and the Appeals Council does not assume jurisdiction over the case. 20 C.F.R. §404.984(d). Significantly, the Acting Commissioner does not argue that plaintiff's failure to seek review of ALJ Mazzarella's decision by the Appeals Council bars him from seeking relief from this court.

U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well-settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. In this case, it is not disputed that: (1) plaintiff is not currently engaged in substantial gainful activity; (2) plaintiff has at least one severe impairment that limits his or her mental or physical ability to do basic work activity; (3) plaintiff's severe impairments do not meet or equal the listings in Appendix 1 of the regulations; and (4) plaintiff cannot perform his or her past work. At issue here is the fifth step: whether in light of the plaintiff's residual functional capacity "there is other work which the [plaintiff] could perform." Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The Commissioner bears the burden of proof on this step. *See* Talavera v. Astrue, 697 F.3d 145 (2d. Cir. 2012).

**B. Consideration of Dr. Liu's Opinion**

Plaintiff argues that ALJ Mazzarella failed to properly assess the opinion of consulting physician Dr. Liu. Plaintiff's Memorandum of Law [17-1], p. 21. Dr. Liu examined plaintiff on February 6, 2015 at the request of the Acting Commissioner (T. 881). He noted plaintiff's history of asthma (and that he uses an inhaler every day), memory problems, chronic headache, nausea, learning disability, arthritis, anxiety and depression. Id. Upon examination, Dr. Liu found that plaintiff had moderate difficulty walking on his heels and toes, and could only squat "40%" due to low back pain (T. 882). He also found that plaintiff's straight leg raise test was "positive at 40 degrees bilaterally" (T. 883). Dr. Liu concluded that plaintiff had "mild to

moderate limitations for prolonged walking, bending, kneeling, and overhead reaching" (T. 884).[6]

On that same date, Dr. Liu completed a more specific "Medical Source Statement of Ability to do Work-Related Activities (Physical)" (T. 885). In this report, he stated that plaintiff could sit for only 20 minutes at one time without interruption, stand and walk 30 minutes at one time without interruption (T. 886). In an eight-hour workday, Dr. Liu opined that plaintiff could sit for a total of only two hours, stand for a total of two hours, and walk for a total of one hour. Id. He was then asked: "[i]f the total time for sitting, standing and walking does not equal or exceed eight hours, what activity is the individual performing for the rest of eight hours?" In response to this question, Dr. Liu stated "laying down relax". Id.

ALJ Mazzarella noted Dr. Liu's findings (T. 310), but discounted his opinion regarding plaintiff's residual functional capacity because it was purportedly inconsistent with his examination findings, which according to ALJ Mazzarella only "showed mild limitations in range of motion testing . . . [but was otherwise] within normal limits" (T. 315). This conclusion mischaracterizes Dr. Liu's clinical findings, which included the fact that plaintiff had difficulty walking on his heels and toes, his ability to squat was limited to 40% due to low back pain (T. 882)[7] and straight leg raising[8] was positive at 40 degrees bilaterally (T. 883). The fact that Dr. Liu described the plaintiff's limitations generally as being "mild to moderate" does not discredit

---

[6] Dr. Liu deferred evaluation of plaintiff's mental issues to a psychologist. Id.

[7] This assessment was similar to the assessment by Dr. Kathleen Kelley six years earlier on June 2, 2009 (plaintiff can "walk on heels. Complains of pain when trying to walk on toes, but could do it a little bit. He squats ½ of the way") (T. 964).

[8] See Reisinger v. Commissioner of Social Security, 2017 WL 2198965, *4 (N.D.N.Y. 2017) ("The Straight Leg Raising (SLR) test has been used as the primary test to diagnosis lumbar disc herniations. . . .") quoting Majlesi J, Togay H, Unalan H, Toprak S., The sensitivity and specificity of the Slump and the Straight Leg Raising tests in patients with lumbar disc herniation, http://www.ncbi.nlm.nih.gov/pubmed/18391677.

his more specific quantification of plaintiff's limitations in sitting, standing and walking during an eight-hour workday (T. 886). *See* Stegall v. Sullivan, 1989 WL 160616, *6 (W.D.N.C. 1989) ("[t]he fact that a patient is 'stable with medication', has a negative treadmill test, or can sometimes walk a mile, does not contradict Dr. Salton's specific findings that Mr. Stegall was unable to lift or carry over 11 pounds"); Banks v. Bowen, 672 F. Supp. 310, 319 (N.D. Ill. 1987) (physician's general characterization that plaintiff was capable of "moderate physical activity . . . cannot take the place" of his more specific findings as to her functional limitations).

ALJ Mazzarella's error in mischaracterizing Dr. Liu's findings and opinion was not harmless. Dr. Liu's consultative examination was the most recent physical examination discussed in ALJ Mazzarella's decision by almost 6 years. Pursuant to Dr. Liu's assessment, plaintiff would have to be deemed disabled inasmuch as such limitations would preclude even sedentary work.[9] In discrediting Dr. Liu's opinion, ALJ Mazzarella did not cite to any clinical findings contrary to those stated by Dr. Liu. Dr. Liu's assessment was not ambiguous.[10] He clearly stated that in an eight-hour day, plaintiff could only sit a total of two hours, stand for a total of two hours and walk for one hour. Dr. Liu also clearly stated that plaintiff would have to lay down and relax the remainder of an eight hour work day.

---

[9] Burns v. Commissioner of Social Security, 2017 WL 2334326, *7 (N.D.N.Y. May 30, 2017) ("the medical opinions of record—including those relied upon by the ALJ—do not appear to support an RFC permitting sedentary work. Sedentary work requires the abilities to sit for six hours, stand and walk for two hours, and lift or carry up to ten pounds in an eight-hour workday"). *See* SSR 96-9p, 1996 WL 374185 at *6 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

[10] Citing §404.1527(c), the Acting Commissioner asserts that the Social Security regulations no longer direct an adjudicator to recontact medical sources and argues that there was no need to recontact Dr. Liu in this case. Acting Commissioner's Memorandum of Law [22-1], p. 14. That provision deals with the general framework for the weighing of medical opinions. However, 20 C.F.R. §1520b(c) provides that where evidence is inconsistent or insufficient an adjudicator may take various actions including recontacting physicians and other medical sources, requesting additional existing records or information, or asking a claimant to undergo a consultative examination. Thus, ALJ Mazzarella could have recontacted Dr. Liu if clarification of his residual functional capacity assessment was necessary. Nevertheless, there was no need to recontact Dr. Liu inasmuch as his assessment was not ambiguous, or inconsistent with any temporally relevant clinical findings.

In light of ALJ Mazzarella's failure to properly consider the findings and opinion of Dr. Liu, his determination that plaintiff has a residual functional capacity to perform medium work is defined in 20 C.F.R. 404.1567(c) is not based upon substantial evidence. To the contrary, Dr. Liu's unrebutted assessment establishes that plaintiff cannot perform substantial gainful activity at any exertion level.

**C. Consideration of the Opinions of Dr. Moss-King and Dr. Thomas Ryan**

Plaintiff also argues that ALJ Mazzarella failed to properly consider the opinion of Dr. Moss-King and impermissibly cited selectively from a report by Dr. Thomas Ryan. Plaintiff's Memorandum of Law [17-1], p. 23, 26.

Dr. Moss-King, is a vocational rehabilitation counselor[11] who worked with plaintiff at Vocational and Educational Services for Individuals with Disabilities ("VESID"). Plaintiff's Memorandum of Law [17-1], pp. 11, 23. On December 23, 2008, Dr. Moss-King assessed plaintiff as "poor to none" with respect to his ability to maintain attention and concentration, or to understand remember and carry out complex job and instructions (T. 290-91). She stated that "evaluation results illustrate that [plaintiff] lacks the skill level in comprehension to successfully training on" (T. 291). In a report dated July 21, 2011, Dr. Moss-King stated that plaintiff was referred to Winship and Associates for a vocational evaluation (T. 1079). Testing indicated that plaintiff's reading was at the second grade level, sentence comprehension at the 4.3 grade level, spelling at the 1.2 grade level in math at the 5.7 grade level. Id.

---

[11] While Dr. Moss-King worked with plaintiff as a vocational counselor at VESID, the record suggests that she was also "a psychologist by training" (T. 423).

Plaintiff was referred to the Niagara County Community College's pathways Program for academic enhancement, however, according to Dr. Moss-King: "[u]nfortunately, Mr. Colon was unable to make significant improvements to return to college. As a result, Mr. Colon lacks the skill level and comprehension to successfully complete a training program. . . . Mr. Colon has attempted employment in the past few years and has been unsuccessful because of his health issues . . . and mental health issues . . . Interfering with his ability to effectively perform. He has difficulty interpreting written material such as job manuals, work orders and signs as well as to effectively write out required documentation has made it difficult for Mr. Colon to maintain employment". Id.

ALJ Mazzarella stated that he did not "give much weight to the opinion of Dr. Moss-King" with respect to plaintiff's inability to maintain attention and concentration "as it was inconsistent with the consultative examiner's evaluation . . . and the claimant's actual attempt at college studies in work activity" (T. 315). It is undisputed that Dr. Moss-King is an "other source". Plaintiff's Memorandum of Law [17-1], p. 23; Acting Commissioner's Memorandum of Law [22-1], p.17.

Opinions from "other sources" are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Hunt v. Commissioner of Social. Security, 2017 WL 1370996, *3 (W.D.N.Y. 2017). *See also* S.S.R. 06-03-p, 2006 WL 2329939, *3. The SSA's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). An ALJ must weigh opinions from other sources based on the factors set forth in the regulations, 20 C.F.R. § 404.1527(c)(1)-(6), and should "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision

allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning[.]" S.S.R. 06-03p, 2006 WL 2329939, at *6. The factors set forth in §1527(c) include: the treatment relationship, the length of the treatment relationship, the nature and extent of the treatment relationship, supportability by relevant evidence, consistency with the record as a whole, and specialization.

ALJ Mazzarella failed to discuss any of these factors when discounting Dr. Moss-King's opinion and relying on a portion of the report by Dr. Ryan, a consultative psychologist who examined plaintiff on June 2, 2009 (T. 959). Although he suggests that Dr. Moss-King's opinion was inconsistent with that of Dr. Ryan, Dr. Ryan had, in fact, also found that plaintiff's attention and concentration were "[i]mpaired apparently due to limited intellectual functioning" (T. 960). Dr. Ryan also opined that plaintiff would have "significant limitation in ability to learn new tasks, perform complex tasks, make adequate decisions at times, deal with others, and deal with stress" (T. 961). Neverthless, Dr. Ryan stated that plaintiff "demonstrates no significant limitation in his ability to follow and understand simple directions, perform simple tasks, generally maintain attention and concentration, maintain a regular schedule" (T. 961). He recommended that plaintiff undergo intelligence testing, "as it is felt that he has some cognitive limitations" (T. 962). He concluded that plaintiff "does not appear to have sufficient skills to manage benefit payments in his own interest at this time". Id.

To the extent that Dr. Ryan's opinion is inconsistent with the assessment by Dr. Moss-King, ALJ Mazzarella made no attempt to utilize the factors in §1527(c) to weigh these respective opinions. While Dr. Ryan examined plaintiff on one occasion, Dr. Moss-King had been working with plaintiff for several years and supported her opinion with reference to a host of cognitive test results (T. 290-91) to which Dr. Ryan did not review (but recognized were needed for a proper assessment of plaintiff's functional capacity). Dr. Moss-King's assessment is

also consistent with plaintiff's well-documented childhood deficiency in the functional area of concentration/persistence/pace (T. 62).

ALJ Mazzarella's assertion that plaintiff's "actual attempt at college studies and work activity" weighs against Dr. Moss-Kings opinion is also unfounded. To the contrary, the record clearly indicates that plaintiff has been unable to maintain employment and earned a 0.0 grade point average in his failed attempt at community college (T. 291). Indeed, earlier in his opinion, ALJ Mazzarella had determined that plaintiff's attempts to continue his education at the college level were inappropriate, stating: "[u]nfortunately, possibly due to his mother's insistence that college-level studies were pursued even though inconsistent with his IQ and learning disability and more suitable suggestions have been disregarded . . . A good deal of difficulty in the claimant's vocational rehab progress appears to come from his mother; who insist the claimant is suitable for college-level studies . . . This may be in part a product of the claimant's birth problems related to significant cocaine exposure prenatal" (T. 314).[12] ALJ Mazzarella makes no attempt to reconcile how plaintiff's failed attempt at college studies is inconsistent with Dr. Moss-King's assessment of his ability to maintain attention and concentration.

Finally, ALJ Mazzarella also cited selectively from the report of Dr. Ryan. Although he focused on Dr. Ryan's opinion that plaintiff had "no significant limitation in his ability to follow and understand simple directions", he made no attempt to reconcile that statement with Dr. Ryan's other findings, including the fact that plaintiff has significant

---

[12] The Acting Commissioner argues that the reports of Dr. Renée Baskin and Dr. Michael Lewis suggest that plaintiff had the ability to function in an academic setting. Acting Commissioner's Memorandum of Law [22-1], p. 18. Plaintiff's actual performance in college contradicts any such suggestion and the language in ALJ Mazzarella's opinion appears to reject such a conclusion. In any event, ALJ Mazzarella did not rely upon the reports of Dr. Baskin or Dr. Lewis with respect to this issue and such *post hoc* arguments are impermissible. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) ("[a] reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action").

limitations in the ability to "make adequate decisions at times, deal with others, and deal with stress", and may have "cognitive problems which may interfere to some degree on a daily basis" (T. 961-62). In addition, ALJ Mazzarella's failure to properly account for plaintiff's limitations with respect to making judgments is contrary to the Social Security Program Operations Manual System ("POMS") which lists the ability to "make judgments that are commensurate with the functions of unskilled work, i.e., Simple work-related decisions" on a sustained basis as one of the basic mental demands to be able to perform unskilled work. POMS DI 25020.010(A)(3)(a).

The unrefuted record in this case demonstrates that plaintiff has cognitive limitations and a learning disability which will materially impair his ability to function in a work setting on a sustained basis.

**D. Credibility**

Plaintiff also argues that ALJ Mazzarella failed to properly assess the plaintiff's credibility. Plaintiff's Memorandum of Law [17-1], p. 29.

An ALJ must consider all of the evidence in record, including statements the claimant or others make about his or her impairments, restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. Genier v. Astrue, 606 F.3d 46, 49 (2nd Cir. 2010) (*citing* 20 C. F.R. §404.1512(b)(3)). SSR 96–7p includes a two-part inquiry for evaluating a plaintiff's contentions of pain and their symptoms: (1) there must be a determination whether the underlying medically determinable physical or mental impairments could reasonably be expected to produce the individual's pain or other symptoms; and (2) if such underlying impairments are found to exist, it must be determined make a finding as to the credibility of the individual's

statements regarding the intensity, persistence, and limiting effects of the symptoms. With regard to this second step, the regulation states:

> "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. . . . These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record."

SSR 96-7P, 1996 WL 374186,*2.

The applicable regulations recognize that a claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone." SSR 96–7p, 1996 WL 374186, *3. However, when the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional

limitations and restrictions due to symptoms. 20 C.F.R. §§404.1529(c)(3) (I)-(vii); 416.929(c)(3)(I)-(vii).

Here, ALJ Mazzarella found that" the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision" (T. 314). Following this boilerplate statement, ALJ Mazzarella stated:

> "While the undersigned has found the claimant to have severe impairments, the claimant's allegations of total disability were not consistent with the record as a whole. The claimant's work record is quite sparse and does not raise the favorable inference is of an individual well motivated to work within your capabilities. It is however, noted to the claimant's credit that he has been active with vocational rehabilitation. Unfortunately, possibly due to his mother's insistence that college-level studies were pursued even though inconsistent with his IQ and learning disability and more suitable suggestions have been disregarded . . . A good deal of difficulty in the claimant's vocational rehab progress appears to come from his mother; who insist the claimant is suitable for college-level studies . . . This may be in part a product of the claimant's birth problems related to significant cocaine exposure pre-natal" The claimant does have a learning disability and low reading level. . . However, the total grade level was 4.1 grade level equivalent . . . The claimant's math was at a 5.7 grade level equivalent. Although the claimant complained of severe problems sitting 20-30 minutes, standing 40 minutes, walking one half block and only able to lift 15 pounds, he admits he isn't under any treatment for his back, ankles or knees except for shoe inserts. The claimant has asthma, but denies medication or emergency room visits or even an inhaler." (T. 314-15).

Plaintiff's failed attempt at community college and his learning disability do not weigh negatively against his credibility. Further, plaintiff's testimony regarding his ability to sit, stand and walk is substantially consistent with the assessment by Dr. Liu. ALJ Mazzarella did not give good reasons to discredit plaintiff's testimony regarding his functional limitations.

## E.  Remand for Calculation of Onset Date and Benefits

A reversal of the Acting Commissioner's determination, and a remand for calculation of benefits, is appropriate when the record provides persuasive proof of disability. Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980) ("We conclude that no useful purpose would be served here by a remand for the development of further vocational evidence"). Here, the unrefuted residual functional capacity assessment by Dr. Liu precludes plaintiff from performing work at any exertional level. Thus, plaintiff has been disabled at least since the date of his examination by Dr. Liu on February 6, 2015.

It is possible, however, that the plaintiff became disabled at an earlier date. Because I cannot determine with certainty the exact onset date, I recommend that this case be remanded for the calculation of benefits and a determination of the onset date. *See* Raja v. Astrue, 2012 WL 1887131, *10 (S.D.N.Y. 2012) ("Because I cannot answer with certainty whether Mr. Raja's residual functional capacity rendered him disabled prior to January 1, 2005, this determination is best left to the Commissioner"); Zubizarreta v. Astrue, 2010 WL 2539684, *8 (E.D.N.Y. 2010 (remanding for determination of onset date); Nixon v. Astrue, 2008 WL 2705164, *6 (S.D. Cal. 2008 (remanding for a calculation of benefits and determination of onset date); Frontanez–Rubiani v. Barnhardt, 2004 WL 2399821, *7 n. 10 (E.D.Pa. 2004) ("Upon remand for a calculation of benefits, the [Social Security Administration] shall determine the claimant's onset date.").

## CONCLUSION

For these reasons, I recommend that plaintiff's motion for judgment on the pleadings [17] be granted to the extent that the determination of the Acting Commissioner should

be reversed and the case remanded for the calculation of benefits and the determination of an exact onset date, and that the Acting Commissioner's motion for judgement on the pleadings [22] be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by September 28, 2017. Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: September 14, 2017

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge