UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

DEEVINE JESSE COLON,

                    Plaintiff,

        -vs-                              **No. 1:15-CV-00834-MAT**
                                         **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.

─────────────────────────────────

## I.   Introduction

Represented by counsel, Deevine Jesse Colon ("Plaintiff") commenced this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying his Title XVI applications for Supplemental Security Income ("SSI") and disabled adult child benefits.

Presently before the Court are two post-judgment motions. First, the Commissioner has filed a Motion to Vacate the Judgment Pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"). See Commissioner's Motion to Alter Judgment ("Rule 60(b) Motion") (Docket No. 35, as amended, Docket No. 38). The Commissioner seeks to overturn the portion of this Court's October 11, 2017 Decision and Order adopting the Report and Recommendation ("R&R") of Magistrate Judge Jeremiah J. McCarthy which reversed the Commissioner's decision and remanded the matter for calculation of

-1-

benefits as of February 6, 2015.[1]

Second, Plaintiff has filed a Cross-motion for Payment of Interim Benefits. See Plaintiff's Response to Rule 60(b) Motion and Cross-Motion for Interim Benefits (Docket No. 40).

For the reasons discussed below, the Commissioner's Rule 60(b) Motion is denied, and Plaintiff's Cross-Motion for Payment of Interim Benefits is granted.

## II. Factual Background and Procedural History

On October 27, 2006, Plaintiff filed an application as a disabled adult child ("DAC") for child disability benefits ("CDB"), asserting disability due to mobility problems, brain damage, depression, asthma, and arthritis. He subsequently filed an application for SSI on September 26, 2007. In both applications, Plaintiff initially alleged a disability onset date of his date of birth, in 1989.[2] After the claim was denied on initial review, an Administrative Law Judge ("ALJ") conducted a hearing in Buffalo, New York, and issued an unfavorable decision on February 20, 2009. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 11, 2011. Plaintiff then commenced an

---

[1]     The Commissioner does not challenge the portion of the Court's judgment which remanded the remainder of Plaintiff's claim for a new hearing to determine whether Plaintiff may have been disabled prior to February 6, 2015.

[2]     Apparently, Plaintiff had been granted benefits on a prior SSI application dated March 30, 1992, when he was age three, due to disabling limitations from his Attention Deficit Hyperactivity Disorder. These SSI benefits were terminated but were later reinstated. In September 2003, Plaintiff also began to receive child's insurance benefits based solely on his age. These benefits ended in August 2007, when Plaintiff stopped attending school full-time and reached his 18th birthday.

action in this Court. <u>See</u> <u>Colon v. Astrue</u>, 1:11-cv-00210-RJA-JJM
(W.D.N.Y. Mar. 11, 2011) ("<u>Colon I</u>").

While waiting for the Appeals Council's decision on his first
set of applications, Plaintiff filed renewed SSI and CDB
applications on February 27, 2009, and March 20, 2009,
respectively. These were denied on initial review. A new ALJ held
hearings in Buffalo on June 14, 2011, and July 26, 2011, and issued
an unfavorable decision on August 11, 2011. Plaintiff sought review
by the Appeals Council which issued an order on June 15, 2012,
vacating the 2011 unfavorable decision and remanding the case for
further administrative proceedings. In particular, the Appeals
Council directed the ALJ to fully address the opinions of
vocational counselor Davina Moss-King, Ph.D. The ALJ conducted
another hearing on October 23, 2012, in Buffalo, New York, and
issued another unfavorable decision on November 7, 2012.

On April 23, 2013, in <u>Colon I</u>, Magistrate Judge McCarthy
issued an R&R recommending that the first set of claims, which had
been denied in the ALJ's February 20, 2009 decision, be remanded
for further administrative proceedings. In particular, the ALJ was
directed to consider Dr. Moss-King's vocational assessment,
evaluate Plaintiff's adjustment disorder, depression, and anxiety;
perform a function-by-function analysis with respect to Plaintiff's
residual functional capacity ("RFC"), and articulate a clear basis
for the credibility assessment. The Court (Arcara, D.J.) adopted

the R&R in full on May 23, 2013. T.403.

Based on the Court's May 23, 2013 decision and order, the Appeals Council issued an order on August 1, 2014, vacating the unfavorable decision dated February 20, 2009. In addition, the Appeals Council vacated the November 7, 2012 unfavorable decision and consolidated both sets of CDB and SSI claims for further proceedings before an ALJ. The Appeals Council instructed the ALJ to reevaluate Dr. Moss-King's opinion as well as the opinion of reviewing psychiatrist M.S. Rahman, M.D., and to reconsider Plaintiff's obesity.

The consolidated claims were assigned to another ALJ on remand. This ALJ held a hearing on March 12, 2015, in Buffalo, New York, and issued an unfavorable decision on June 4, 2015. The ALJ determined that Plaintiff suffered from the following severe impairments: obesity, chronic back pain, asthma, learning disorder (operating at marginal level overall with a fourth-grade reading level and fifth-grade math level, with expressive and receptive delays), borderline to low average intellectual functioning, depressive disorder, and anxiety disorder. Notwithstanding these impairments and the resultant limitations, the ALJ found, Plaintiff had the RFC to perform a range of unskilled medium exertion work. T.308. Based upon the vocational expert's testimony, the ALJ found that Plaintiff could perform the job requirements of a dishwasher, dining room attendant, and laundry worker. T.316-17.

-4-

Plaintiff declined to seek review of the ALJ's decision by the Appeals Council. Pursuant to 20 C.F.R. §§ 404. 984(d) and 416.1484(d), the ALJ's decision became the final determination of the Commissioner after a 61-day waiting period. When that period expired, Plaintiff commenced this action on September 17, 2015. Colon v. Berryhill, 1:15-cv-00834-MAT-JJM (W.D.N.Y. Sept. 17, 2015) ("Colon II").

On September 14, 2017, Magistrate Judge McCarthy issued a Report and Recommendation in Colon II, finding that Plaintiff had been disabled since at least February 6, 2015, the date of his examination by consultative physician Hongbiao Liu, M.D., because Dr. Liu's "unrefuted" RFC assessment "preclude[d] [him] from performing work at any exertional level." R&R (Docket No. 29) at 16. Magistrate Judge McCarthy noted that it was "possible" that Plaintiff became disabled at an earlier date. However, because he could not determine with certainty the exact onset date, Magistrate Judge McCarthy recommended that, in addition to remanding the case for the calculation of benefits as of February 6, 2015, the matter be remanded for further administrative proceedings to determine the exact disability onset date. Id. (citations omitted). Neither party objected to the R&R. On October 11, 2017, this Court issued a Decision and Order adopting the Report and Recommendation in its entirety. Judgment was entered in Plaintiff's favor on October 12, 2017.

On November 8, 2017, the Niagara Falls Field Office ("Field Office") of the Social Security Administration ("SSA") received Plaintiff's SSI claim with an interim onset date of February 6, 2015, for Pre-Effectuation Review Contact processing. See Declaration of Jeffrey Buckner ("Buckner Decl.") (Docket No. 38), ¶ 5. In the course of reviewing Plaintiff's earning records, the Field Office discovered that he had commenced working at substantial gainful activity ("SGA") levels in November 2015, within a year of his interim onset date of February 6, 2015. Id., ¶ 6 (citing Wage Records, Defendant's Exhibit ("Def.'s Ex.") 2 (Docket No. 38-2)). Furthermore, this SGA employment had been continuous up until the third quarter of 2017. Id. (citing Ex. 2 (Docket No. 38-2)).

On January 24, 2018, the Field Office notified the SSA's New York Regional Office's Center for Disability Program Support about the issue with Plaintiff's wage records indicating work at SGA levels. The Field Office inquired whether, in light of this Court's 2017 judgment, it had the authority to deny the claim for interim benefits based on the evidence it found that Plaintiff had been working at SGA levels.

Meanwhile, on February 18, 2018, the Appeals Council acted on this Court's 2017 judgment by issuing an order vacating the Commissioner's most recent unfavorable decision. See Def.'s Ex. 1 (Docket No. 38-1). The Appeals Council remanded the claim so that

an ALJ could offer Plaintiff the opportunity for a hearing, take any further action necessary to complete the administrative record, and issue a new decision on the issue of disability prior to February 6, 2015. With regard to the period beginning February 6, 2015, the Appeals Council found that Plaintiff had been disabled, as defined in the Act, for purposes of his SSI application only, subject to the pertinent income and eligibility requirements. The Appeals Council noted that Plaintiff was not disabled prior to the date he attained age 22, and therefore he was not disabled based on his application for CDB.

On August 28, 2018, in connection with the Field Office's January 24, 2018 inquiry concerning the evidence of Plaintiff working at SGA levels, the Center for Disability Program Support contacted the SSA's Office of the General Counsel and asked it to evaluate the situation and advise on the appropriate course of action. Buckner Decl., ¶ 8.

On February 20, 2019, in furtherance of the Appeals Council's remand order of February 2018, the SSA issued a Notice of Hearing indicating that Plaintiff was scheduled to appear before an ALJ on July 18, 2019, on the question of whether he was disabled prior to the interim onset date of February 6, 2015. Buckner Decl., ¶ 9 (citing Def.'s Ex. 3 (Docket No. 38-3)).

On April 2, 2019, the Commissioner filed the pending Rule 60(b) Motion (Docket No. 35, as amended, Docket No. 38). Plaintiff

has opposed the motion and filed a cross-motion for payment of interim benefits (Docket No. 40). The Commissioner replied to Plaintiff's opposition and opposed the motion for interim benefits (Docket No. 41). Plaintiff replied to the Commissioner's opposition (Docket No. 42).

On September 26, 2019, Plaintiff filed the ALJ's July 31, 2019 decision (Docket No. 44) which followed the administrative hearing held on July 18, 2019, regarding whether Plaintiff could establish disability prior to February 6, 2015. In this latest decision, the ALJ determined that prior to February 6, 2015, Plaintiff had the RFC to perform a full range of unskilled, low interpersonal contact work at all exertional levels, except that he needed to avoid concentrated exposure to respiratory irritants.

## III. Rule 60(b) Standard

Rule 60(b) permits a court, on motion and just terms, to relieve a party from a final judgment, order, or proceeding for any of the following reasons:

> (1) Mistake, inadvertence, surprise, or excusable neglect;
> (2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) The judgment is void;
> (5) The judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) Any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion under Rule 60(b) must be made within a "reasonable time[.]" Fed. R. Civ. P. 60(c)(1). And, if the motion is brought pursuant to subsections (1), (2), and (3) of Rule 60(b), it must be filed "no more than a year after the entry of the judgment or order[.]" Id.

Rule 60(b)(6) permits relief from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Second Circuit has described subsection (6) as a "grand reservoir of equitable power to do justice in a particular case." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (quoting Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986)). Nonetheless, invocation of subsection (6) requires a showing of "exceptional circumstances" by the moving party. United States v. Cirami, 535 F.2d 736, 738 (2d Cir. 1977) (citations omitted). The Second Circuit has also instructed that a "court may treat a motion to vacate a prior judgment as having been made under [Rule] 60(b)(6) only if the other, more specific grounds for relief encompassed by the rules are inapplicable." Maduakolam v. Columbia Univ., 866 F.2d 53, 55 (2d Cir. 1989).

## IV. Discussion

### A. Determination of Which Subsection of Rule 60(b) Applies

The Commissioner asserts entitlement to relief under subsection (5) or, in the alternative, subsection (6) of Rule 60(b). Plaintiff contends that the only proper ground for the

Commissioner's motion is subsection (2), which covers newly discovered evidence, and that the motion must be denied because it is clearly untimely, having been brought more than a year after the judgment.

Plaintiff also argues that, to the extent the Commissioner's motion is properly made pursuant to subsection (5), it was not made within a reasonable time and "good cause" for the delay is lacking.

The Commissioner responds that Rule 60(b)(2) is inapplicable because Plaintiff's earnings records are not newly discovered evidence and that, even if subsection (2) applies, nothing in Rule 60(b) prevents a party from seeking relief under both subsections (2) and (5). The Commissioner also argues that "good cause" is only required if the motion is not made within a "reasonable time," and that eighteen months is, as a matter of law, a reasonable time under Second Circuit precedent.

### 1.   Subsection (2)

Plaintiff argues that the Commissioner's motion should have been brought pursuant to Rule 60(b)(2). Under subsection (2), a party seeking relief "must show that (1) newly discovered evidence is of facts existing at the time of trial; (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them; (3) the newly discovered evidence is admissible and probably effective to change the result of the former ruling; and (4) the newly discovered evidence is not merely cumulative or

impeaching of evidence already offered." Weissmann v. Freeman, 120 F.R.D. 474, 476 (S.D.N.Y. 1988) (citing 11 C. Wright & A. Miller, Federal Practice and Procedure § 2808, at 55-60, § 2859, at 182-85 (1973)). The Court need not decide whether Plaintiff's wage records constitute "newly discovered evidence" for purposes of Rule 60(b)(2) because, even if they do, the Commissioner's motion must be dismissed as untimely.

Rule 60(b)(2) motions must be filed within one year of "the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). This "one-year limitation period for Rule 60(b) motions is 'absolute.'" Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 466 F.3d 97, 100 (2d Cir. 2006) (quoting Warren v. Garvin, 219 F.3d 111, 114 (2d Cir. 2000)). Therefore, even assuming the Commissioner should have relied on Rule 60(b)(2), the rule nevertheless mandates denial of the motion because it was brought 17 months and 23 days after entry of the judgment.

## 2. Subsection (5)

As noted above, Rule 60(b)(5) allows a court to relieve a party from a final judgment when the judgment has been satisfied, reversed, discharged, or is no longer equitable. Fed. R. Civ. P. 60(b)(5). The "no longer equitable" clause of Rule 60(b)(5) "may not be used to challenge the legal conclusions on which a prior judgment or order rests," but it still offers "a means by which a

party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" <u>Horne v. Flores</u>, 557 U.S. 433, 447 (2009) (quoting <u>Rufo v. Inmates of Suffolk Cty. Jail</u>, 502 U.S. 367, 384 (1992)).

"The party who seeks relief under Rule 60(b)(5) 'bears the burden of establishing that changed circumstances warrant relief,' and must show that applying the judgment prospectively is no longer equitable by proving a change in factual conditions or the law[.]" <u>Jordan v. U.S. Dep't of Labor</u>, 331 F.R.D. 444, 453 (D. D.C. 2019) (quoting <u>Salazar v. District of Columbia</u>, 729 F. Supp.2d 257, 263–64 (D. D.C. 2010)).

### a. The "Prospective Application" Requirement

"[A] final judgment or order has 'prospective application' for purposes of Rule 60(b)(5) only where it is 'executory' or involves 'the supervision of changing conduct or conditions.'" <u>Tapper v. Hearn</u>, 833 F.3d 166, 171 (2d Cir. 2016) (quoting <u>DeWeerth v. Baldinger</u>, 38 F.3d 1266, 1275 (2d Cir. 1994); further quotation omitted). "That a judgment or order sought to be modified has prospective force is an indispensable condition for obtaining relief from that judgment or order under the third set of circumstances listed in Rule 60(b)(5)." <u>Id.</u> at 172 (citation omitted).

The D.C. Circuit has observed that "[v]irtually every court

order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied. . . ." <u>Twelve John Does v. D.C.</u>, 841 F.2d 1133, 1138 (D.C. Cir. 1988). Nevertheless, the fact that "a court's action has continuing consequences . . . does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)." <u>Id.</u> Thus, as a general rule, "[s]imple money judgments may not be set aside or reopened under Rule 60(b)(5) because simple money judgment have no prospective application." 12 James Wm. Moore, Federal Practice § 60.47[1][b] & n.3 (3d ed. 2019) ("Federal Practice") (citing, <u>inter alia</u>, <u>Kock v. Government of V.I.</u>, 811 F.2d 240, 244 (3d Cir. 1987) (relief from money judgment under Rule 60(b)(5) unavailable for defendant, even though its insurer subsequently went bankrupt; "the judgment initially entered was final at law and not prospective in equity")); <u>see also</u> <u>United States v. Melot</u>, 712 F. App'x 719, 721 (10th Cir. 2017) (unpublished opn.) (collecting cases). "Even if the judgment debtor has not yet paid the judgment, it remains a final judgment; it is not 'prospective,' since it is not executory and involves no judicial supervision of changing conduct or conditions." 12 Federal Practice § 60.47[1][b] & n.3.1 (citing <u>Stokors S.A. v. Morrison</u>, 147 F.3d 759, 762 (8th Cir. 1998) (Rule 60(b)(5) could not be used to relieve party from money judgment; although "judgment may be 'prospective' to extent

-13-

that [judgment debtor] has failed to pay it in timely manner, it is nevertheless a final order and is not 'prospective' for purposes of" the rule)).

The Court's judgment effectively awarded money damages to Plaintiff, but it did not indicate a sum certain. The Commissioner contends that the portion of the Court's judgment remanding the case for calculation and payment of benefits based on an interim onset date of February 6, 2015, is executory, and thus has "prospective application," because it "left calculation of benefits in the hands of the Commissioner upon remand." Defendant's Supporting Memorandum of Law ("Def.'s Mem.") (Docket No. 35-1) at 6 (citing Docket Nos. 31 & 32)).

Looking more closely at the terms "executory" and "prospective," they connote something that will take full effect or be operative at a future time. See BLACK'S LAW DICTIONARY 652, 1342 (9th ed. 2009). "A judgment may be deemed to have 'prospective application' or to be 'executory' if it does not fix all of the rights and liabilities of the parties and leaves some of those rights and liabilities to be determined on the basis of future events." United States v. Kayser-Roth Corp., Inc., 103 F. Supp.2d 74, 79 (D.R.I. 2000), aff'd sub nom. United States v. Kayser-Roth Corp., 272 F.3d 89 (1st Cir. 2001). In Kayser-Roth, at issue was a declaratory judgment holding the defendant liable for previously incurred environmental response costs; it also held the defendant

liable "for all further response costs incurred by the United States related to" a certain hazardous waste site. Id. at 78. The defendant moved pursuant to Rule 60(b)(5) seeking relief from the portion of the declaratory judgment imposing liability for future response costs. The district court agreed that the "declaratory judgment establishing liability but deferring the question of damages until a later time is prospective within the meaning of Rule 60(b)(5), at least with respect to the issue of damages." Id. at 79. Although the judgment "declared Kayser-Roth liable for future response costs, it did not identify which costs would qualify as response costs under CERCLA or what amounts would be recoverable. Those matters necessarily were left to be determined on the basis of future events." Id. (emphasis supplied). In other words, the amount of damages necessarily was unknown at the time of the declaratory judgment because the response costs had not yet been incurred.[3] See id.

Here, by contrast, the amount of benefits payable to Plaintiff was not "left to be determined on the basis of future events[,]" Kayser-Roth Corp. Inc., 103 F. Supp.2d at 79. Rather, the Court awarded benefits for a period of disability that commenced on a date prior to the judgment. See Kapar v. Islamic Republic of Iran, 105 F. Supp.3d 99, 104 (D.D.C. 2015) (plaintiff's judgment did not

---

[3]        Ultimately, the district court denied the defendant's Rule 60(b)(5) motion due to other considerations, including that vacating the judgment would be an empty exercise given the law of the case. Kayser-Roth Corp., Inc., 103 F. Supp.2d at 82-83.

have prospective application for purposes of Rule 60(b)(5) where the judgment was "for damages stemming from past conduct—the opposite of prospective relief"; "[t]he fact that most of the judgment remains unsatisfied does not mean the judgment involves 'the supervision of changing conduct or conditions'") (quoting Twelve John Does, 841 F.2d at 1139)).

The Court finds that the instant case is more similar to Keepseagle v. Vilsack, 118 F. Supp.3d 98, 124-25 (D.D.C. 2015), in which the defendant brought a Rule 60(b)(5) motion to vacate the cy pres provision in an agreement settling a class action between Native American farmers and the USDA. The district court agreed that the cy pres provision "arguably has some characteristics of a prospective order . . . insofar as the distribution process requires Class Counsel to solicit and recommend cy pres recipients and creates an administrative task for the Court to approve the recommendations." Keepseagle, 118 F. Supp.3d at 125. Nonetheless, the district court found, the cy pres provision did not have prospective application so as to bring it within the ambit of Rule 60(b)(5) because it lacked the "type of binding effect on a party's future behavior that makes a judgment prospective within the meaning of Rule 60(b)(5)." That is, "[i]t does not . . . 'compel [anyone] to perform, or order [anyone] not to perform, any future act; it d[oes] not require the court to supervise any continuing interaction between [anyone] and the other parties to the case.'"

Id. (quoting <u>Twelve John Does</u>, 841 F.2d at 1139; alterations in original).

Here, the Court's judgment could be described as "compel[ing] [the Commissioner] to perform" the "future act" of calculating benefits and paying them to Plaintiff. But "that is not the same thing as a party to the case being subject to limitations on future conduct, and courts have emphasized the need for such limitations if a judgment is to be considered prospective." <u>Keepseagle</u>, 118 F. Supp.3d at 125 (finding that cy pres portions of class action settlement agreement were "akin to unpaid damages[;] [t]he mere fact that they have yet to be paid out, leaving some administrative responsibilities to be executed, does not render them prospective") (citing <u>Comfort v. Lynn Sch. Comm.</u>, 560 F.3d 22, 28 (1st Cir. 2009) ("[W]e have limited the provision's application to injunctions and consent decrees that involve long-term supervision of changing conduct or conditions.") (quotation marks omitted); citing <u>Marshall v. Board of Ed., Bergenfield, N.J.</u>, 575 F.2d 417, 425 n.7 (3d Cir. 1978) ("A 'prospective' injunction envisions a restraint of future conduct, not an order to remedy past wrongs when the compensation payment is withheld from the beneficiaries until some subsequent date."); other citation and footnote omitted). Because every money judgment could be characterized as ordering the judgment debtor to pay an amount of money to the prevailing party, it would mean every money judgment has prospective application. In that case, the

exception would swallow the rule. The Court therefore finds that the judgment awarding calculation and payment of disability benefits from a certain onset date does not have "prospective application" within the meaning of Rule 60(b)(5), making that rule inapplicable.

### b. The Reasonable Time and Good Cause Requirements

Even assuming that the judgment is prospective and subsection (5) of Rule 60(b) is applicable, the Commissioner still must demonstrate that it was made within a reasonable time under the circumstances. See Thai-Lao Lignite Co. v. Gov't of Lao People's Democratic Republic, 864 F.3d 172, 186 (2d Cir. 2017) ("In considering a Rule 60(b)(5) motion, courts should "consider whether the motion was made within a reasonable time, whether the movant acted equitably, and whether vacatur would strike an appropriate balance between serving the ends of justice and preserving the finality of judgments.").

The Commissioner's motion was made on April 2, 2019, 17 months and 23 days after judgment was entered on October 12, 2017. The Commissioner argues that, in the Second Circuit, 18 months is a presumptively reasonable time for purposes of Rule 60(b). See Def.'s Mem. (Docket No. 35-1) at 7 (citing Rowe Entm't v. Wm. Morris Agency, Inc., No. 98-8272, 2012 WL 5464611, at *2 (S.D.N.Y. Nov. 8, 2012) ("In this Circuit, a reasonable time is within eighteen months of the entry of judgment, unless the movant shows

good cause for the delay or mitigating circumstances[.]") (citing Korelis v. Pennsylvania Hotel, No. 99 CV 7135, 1999 WL 980954, at *1 (2d Cir. Oct. 8, 1999) (unpublished opn.); internal citation omitted); Wells v. New York City Transit Auth., No. 13-cv-4965, 2013 WL 6409457, at *3 (S.D.N.Y. Dec. 9, 2013) (same).[4] However, as the Commissioner acknowledges, this alleged 18-month presumption is not applied consistently by district courts in this Circuit. See Def.'s Mem. at 7 (citing Peyser v. Searle Blatt & Co., No. 99-cv-10785 WK, 2001 WL 1602129, at *2 (S.D.N.Y. Dec. 14, 2001) ("It has been nearly sixteen months since we entered summary judgment in favor of the Searle Defendants and such a delay in filing the motion is unreasonable.") (citing Young v. Coughlin, No. 87CV01122(NPM/GLS), 2001 WL 1230836, at *2 (N.D.N.Y. Sept. 24, 2001) ("This court does not consider plaintiff's fourteen-month delay in bringing this motion to be 'reasonable' and, thus, the motion is also untimely under Rule 60(b)(6).")).

Moreover, the Second Circuit has never articulated that 18 months is a presumptively reasonable time to bring a Rule 60(b) motion. The Court notes that Korelis, 1999 WL 980954, at *1, cited by Rowe, is an unpublished Second Circuit decision which did not hold or suggest that an 18-month delay in bringing a Rule 60(b) motion is presumptively reasonable; nor did that case indicate that "good cause" need only be shown if the delay is longer than 18

---

[4]     Rowe and Wells were decided by the same district judge.

months. Instead, <u>Korelis</u> stated that the appellant's motion was "time-barred as not 'within a reasonable time.' Appellant has failed to show good cause for his [two and one-half year] delay." <u>Id.</u> (citing <u>Kotlicky v. United States Fidelity & Guar. Co.</u>, 817 F.2d 6, 9 (2d Cir. 1987)). This phrasing suggests that the lack of good cause contributed to the panel's finding regarding the unreasonableness of the delay.

<u>Kotlicky</u>, in turn, did not hold that there is any particular duration of a delay in bringing a Rule 60(b) motion that qualifies as "presumptively reasonable." Rather, after noting that "[a]ll Rule 60(b)[5] motions must 'be made within a reasonable time,'" the Second Circuit stated that "[g]enerally, courts require that the evidence in support of the motion to vacate a final judgment be 'highly convincing,' that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties." <u>Kotlicky</u>, 817 F.2d at 9 (internal quotations and citation omitted). "Good cause" thus appears to be one factor in determining what constitutes a reasonable time in light of the particular facts in each case; it is not an element that need only be demonstrated after a party's delay surpasses 18 months. <u>See</u> 11 Wright & Miller § 2866 ("What constitutes reasonable time necessarily depends on

---

[5]     This is not strictly correct; the "reasonable time" "limitation does not apply to a motion under clause (4) attacking a judgment as void. There is no time limit on a motion of that kind." C. Wright, A. Miller, & M.K. Kane, 11 Fed. Prac. & Proc. Civ. ("Wright & Miller") § 2866 (3d ed.) (Aug. 2019 Update)(footnote and citations omitted).

the facts in each individual case. The courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and whether the moving party had some good reason for the failure to take appropriate action sooner.") (footnotes and citations omitted); cf. Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 656 (2d Cir. 1979) ("Although the fact that a motion [under Rule 60(b)(1), (2), or (3)] [i]s made barely within the one-year time limit gives the court the [p]ower to entertain it, as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'").

Scott v. Apfel, 194 F.R.D. 655 (N.D. Iowa 2000), is almost identical factually to the instant case. Although the Commissioner's Rule 60(b) motion was not brought pursuant to subsection (5), the Court finds that its discussion of due diligence under subsection (2) is instructive on the issue of unreasonable delay. In Scott, the district court found that the Commissioner was not entitled to relief from the order requiring payment of disability benefits on ground of newly discovered evidence of the claimant's earnings in 1997 and 1998, or under the fraud and catchall provisions of Rule 60(b), premised on the claimant's alleged concealment of pertinent evidence concerning his earnings. In finding that the Commissioner could not satisfy the

due diligence requirement for subsection (2) pertaining to newly discovered evidence, the district court noted that "the proffered excuse for failing to discover the information . . . is that, even though the plaintiff says he reported the information as required in connection with a subsequent claim for benefits filed March 6, 1998, there was no indication to the defendant that work activity after January 1997 should be investigated in <u>this</u> case." <u>Scott</u>, 194 F.R.D. at 658-59 (emphasis in original). That argument did "not establish any 'justifiable excuse,' however, because one of the critical issues before the administrative law judge and this court in these proceedings has been whether or not the plaintiff was disabled on the basis of Dr. Ung's evaluation in March of 1997 and other evidence." <u>Id.</u> at 659. Thus, the district court concluded, the Commissioner "established no more than that counsel failed to look for pertinent information already in the defendant's possession during the evidentiary phase of these proceedings until after the judgment was entered in this case." <u>Id.</u> (quoting <u>Alpern v. UtiliCorp United, Inc.</u>, 84 F.3d 1525, 1537 (8th Cir. 1996); emphasis in original)). The Court finds <u>Scott</u>'s reasoning equally applicable in this case in the context of assessing whether the Commissioner's delay in bringing the motion was reasonable.

Here, judgment was entered in Plaintiff's favor on October 12, 2017. The SSA first became aware of the grounds for the Rule 60(b) Motion on November 8, 2017, when the Field Office discovered

evidence of Plaintiff's SGA employment. The Field Office did not contact the Center for Disability Program Support, the next tier in the chain of command, until January 24, 2018. This entity did not act on the Field Office's inquiry until August 28, 2018, about 8 months later, when it referred the question to Office of General Counsel for further evaluation. Then, an additional 7 months and 5 days elapsed before the Commissioner brought this motion.

While the Commissioner has taken the position that she need not show good cause or a justifiable reason for delay because the Rule 60(b) motion was brought within 18 months of the judgment, she does cite "administrative processing times" in the SSA as the cause for the delay. Def.'s Mem. (Docket No. 35-1) at 7. However, the reasonableness inquiry is fact-specific and tailored to each particular case. <u>See</u>, <u>e.g.</u>, <u>Gouldbourne v. J.F. Jelenko & Co.</u>, No. 98 CIV. 7243 (LAK), 2000 WL 546762, at *1 (S.D.N.Y. Jan. 13, 2000) ("What is reasonable will vary from case to case and depends on, among other things, whether the adverse party has been prejudiced and 'whether the moving party had some good reason for his failure to take appropriate action sooner.'") (quoting 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2866, at 382-83 (1995)).

The Commissioner has not explained why a nearly 18-month delay is reasonable in <u>this</u> particular case; nor does she believe she needs to do so. <u>See</u> Def.'s Reply (Docket No. 41) at 5

("Plaintiff fails to explain why the Commissioner's citation to 'administrative processing times' would not constitute 'good cause' or otherwise be an acceptable excuse for the delay."). But the burden of showing reasonableness under Rule 60(b) lies with the Commissioner–not Plaintiff. See <u>United States v. Int'l Bhd. of Teamsters</u>, 247 F.3d 370, 391 (2d Cir. 2001) ("The burden of proof is on the party seeking relief from judgment[.]") (citation omitted).

Moreover, lengthy "administrative processing times" for disability claims does not account for the periods of time that the Field Office's discovery about Plaintiff's earning records idled with the Center for Disability Program Support[6] and Office of General Counsel[7]—neither of which appears to have organizational responsibility for processing disability claims. Thus, the Court concludes that under the circumstances of this case, the Commissioner has not established good cause for the failure to act sooner on the information concerning Plaintiff's earning records. <u>Cf.</u> <u>Scott</u>, 194 F.R.D. at 658-59.

### 3. Subsection (6)

Finally, in light of the Court's finding that the Commissioner's motion was not brought within a reasonable time for purposes of subsection (5), the Court cannot grant relief under

---

[6]    See https://www.ssa.gov/ny/services-regional.htm (last accessed Oct. 20, 2019).

[7]    See https://www.ssa.gov/org/orgOGC.htm (last accessed Oct. 20, 2019).

subsection (6), which also requires that a motion brought thereunder be filed within a reasonable time. See Fed. R. Civ. P. 60(c)(1). Furthermore, the Court finds that the Commissioner has not even attempted to demonstrate "extraordinary circumstances." See Def.'s Mem. (Docket No. 35-1) at 11 ("While the Rule is generally only applied with a showing of 'exceptional circumstances,' the Commissioner contends that the circumstances are appropriate here, where the ineligibility is clear, the ineligibility was present at the time of the Order and Judgment" and "there is true risk of a violation of the Constitution's Appropriations Clause if the relevant portions of the Order and Judgment are not vacated."). To the extent that the Commissioner contends that Rule 60(b)(6) is "appropriate" because Plaintiff's "ineligibility" for benefits was "clear" in October 2017, this reaffirms the Court's conclusion that the Commissioner unreasonably delayed in bringing the Rule 60(b) Motion. Cf. Scott, 194 F.R.D. at 659 ("Thus, the defendant has established no more than that counsel failed to look for pertinent information already in the defendant's possession during the evidentiary phase of these proceedings until after the judgment was entered in this case."). Moreover, the Court's "disposition of [the Commissioner]'s motion must be made on the basis of the standards applicable to a Rule 60(b) motion, not on the basis of some reargument of the merits of [Plaintiff]'s disability claim." Scott, 194 F.R.D. at 657 (rejecting as

irrelevant the Commissioner's discussion of the standards for disability under Social Security law; finding that the claimant's failure to report his ongoing work activity was not a basis for relief under Rule 60(b)(6)).

**V.  Conclusion**

For the foregoing reasons, the Commissioner's Motion to Alter the Judgment is denied, and Plaintiff's Cross-Motion for Payment of Benefits is granted.

**SO ORDERED.**

*s/ Michael A. Telesca*
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    October 21, 2019
          Rochester, New York.